Ethan D. Millar (State Bar No. 198097)
ethan.millar@alston.com
Elizabeth A. Sperling (State Bar No. 231474)
elizabeth.sperling@alston.com
Coral Del Mar Lopez (State Bar. No. 308242)
coral.lopez@alston.com
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA  90071-1410
Telephone:   213-576-1000
Facsimile:    213-576-1100

Michael P. Kenny (*pro hac vice* application forthcoming)
mike.kenny@alston.com
Jonathan D. Parente (*pro hac vice* application forthcoming)
jonathan.parente@alston.com
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone:   404-881-7000
Facsimile:    404-881-7777

Thomas Carlucci (State Bar No. 135767)
tcarlucci@foley.com
**FOLEY & LARDNER**
555 California Street, Suite 1700
San Francisco, CA 94104
Telephone:   415-434-4484
Facsimile:    415-434-4507

Attorneys for Defendants
CLUBCORP HOLDINGS, INC., ET AL.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BETTY T. YEE, CONTROLLER OF THE STATE OF CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>CLUBCORP HOLDINGS, INC., CLUBCORP CLUB OPERATIONS, INC., CCA CLUB OPERATIONS HOLDING, LLC, CLUBCORP USA, INC., CLUBCORP ALISO VIEJO HOLDING CORP., BERNARDO HEIGHTS COUNTRY CLUB, CLUBCORP BRAEMAR COUNTRY CLUB, INC., CLUBCORP CREST COUNTRY CLUB, | Case No.<br><br>**NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1331, 1441, 1446**<br><br>[Removed from San Francisco Superior Court, Case No. CGC-19-576314]<br><br>Complaint Filed:  May 29, 2019 |

**NOTICE OF REMOVAL**

INC., CLUBCORP CENTER CLUB, INC.,
CLUBCORP COTO PROPERTY
HOLDINGS, INC., CLUBCORP CROW
CANYON MANAGEMENT CORP.,
CLUBCORP DESERT FALLS COUNTRY
CLUB, INC., GRANITE BAY GOLF
CLUB, INC., A/K/A CLUBCORP
GRANITE BAY MANAGEMENT, INC.,
CLUBCORP IW GOLF CLUB, INC.,
CLUBCORP MISSION HILLS COUNTRY
CLUB, INC., CLUBCORP PORTER
VALLEY COUNTRY CLUB, INC.,
SANTA ROSA GOLF & COUNTRY
CLUB, CLUBCORP SPRING VALLEY
LAKE COUNTRY CLUB, INC.,
CLUBCORP TEAL BEND GOLF CLUB,
INC., CLUBCORP TURKEY CREEK
GOLF CLUB, INC., CLUBCORP
SYMPHONY TOWERS CLUB, INC.,
CITY CLUB OF LOS ANGELES,
INC.,A/K/A CLUBCORP BUNKER HILL
CLUB, INC., SILICON VALLEY
CAPITAL CLUB A/K/A CLUBCORP SAN
JOSE CLUB, INC., MORGAN RUN CLUB
& RESORT, EMPIRE RANCH GOLF
CLUB, INC., OLD RANCH COUNTRY
CLUB, LLC, SHADOWRIDGE GOLF
CLUB, INC., ROYAL DRIVE COUNTRY
CLUB, INC., MCC MANAGEMENT
CORPORATION, LAKEVIEW CITY
CLUB, INC., SAN FRANCISCO TENNIS
CLUB, INC., LOS GATOS TENNIS CLUB,
INC., MARINA CLUB MANAGEMENT,
INC., CLUBCORP AIRWAYS GOLF
CLUB, INC., AND DOES 1-100,

Defendants.

LEGAL02/39060481v13

NOTICE OF REMOVAL

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, this action is hereby removed from the Superior Court of the State of California, County of San Francisco, to the United States District Court for the Northern District of California.  Removal is proper on the following grounds:

**I.     REMOVAL IS TIMELY**

1.     Plaintiff Betty T. Yee, Controller of the State of California ("Plaintiff"), filed the Complaint against Defendants listed above (collectively, "Defendants") in the Superior Court of the State of California, County of San Francisco, Case No. CGC-19-576314, on May 29, 2019 ("the State Court Action").

2.     All named Defendants in this action are represented by undersigned counsel, have received Plaintiff's Original Complaint ("Complaint") within the 30 days prior to the filing of this Notice of Removal, and now consent to the removal of this action with the reservation of all rights and defenses.   28 U.S.C. § 1446(b)(2)(B).   Defendants are: CLUBCORP HOLDINGS, INC.; CLUBCORP CLUB OPERATIONS, INC.; CCA CLUB OPERATIONS HOLDINGS, LLC, erroneously sued as CCA CLUB OPERATIONS HOLDING, LLC, CLUBCORP USA, INC.; CLUBCORP ALISO VIEJO HOLDING CORP.; BERNARDO HEIGHTS CC, LLC erroneously sued as BERNARDO HEIGHTS COUNTRY CLUB; CLUBCORP BRAEMAR COUNTRY CLUB, INC.; CLUBCORP CANYON CREST COUNTRY CLUB, INC. erroneously sued as CLUBCORP CREST COUNTRY CLUB, INC.; CLUBCORP CENTER CLUB, INC.; CLUBCORP COTO PROPERTY HOLDINGS, INC.; CLUBCORP CROW CANYON MANAGEMENT CORP.; CLUBCORP DESERT FALLS COUNTRY CLUB, INC.; CLUBCORP GRANITE BAY MANAGEMENT, INC. erroneously sued as GRANITE BAY GOLF CLUB, INC. A/K/A CLUBCORP GRANITE BAY MANAGEMENT, INC.; CLUBCORP IW GOLF CLUB, INC.; CLUBCORP MISSION HILLS COUNTRY CLUB, INC.; CLUBCORP PORTER VALLEY COUNTRY CLUB,

INC.; SANTA ROSA CC, LLC erroneously sued as SANTA ROSA GOLF & COUNTRY CLUB; CLUBCORP SPRING VALLEY LAKE COUNTRY CLUB, INC.; CLUBCORP TEAL BEND GOLF CLUB, INC.; CLUBCORP TURKEY CREEK GOLF CLUB, INC.; CLUBCORP SYMPHONY TOWERS CLUB, INC.; CLUBCORP BUNKER HILL CLUB, INC. erroneously sued as CITY CLUB OF LOS ANGELES, INC., A/K/A CLUBCORP BUNKER HILL CLUB, INC.; CLUBCORP SAN JOSE CLUB, INC. erroneously sued as SILICON VALLEY CAPITAL CLUB A/K/A CLUBCORP SAN JOSE CLUB, INC.; CLUBCORP GOLF OF CALIFORNIA, LLC erroneously sued as MORGAN RUN CLUB & RESORT; EMPIRE RANCH, LLC erroneously sued as EMPIRE RANCH GOLF CLUB, INC.; SEQUOIA MANAGEMENT SERVICES LLC erroneously sued as OLD RANCH COUNTRY CLUB, LLC; CLUBCORP SHADOW RIDGE GOLF CLUB, INC. erroneously sued as SHADOWRIDGE GOLF CLUB, INC.; OK ROYAL DRIVE COUNTRY CLUB, INC. erroneously sued as ROYAL DRIVE COUNTRY CLUB, INC.; OK MCC MANAGEMENT CORP. erroneously sued as MCC MANAGEMENT CORPORATION; OK LAKEVIEW CLUB, INC. erroneously sued as LAKEVIEW CITY CLUB, INC.; OK PRE 2.1.09 OWNER/OPERATOR OF SAN FRANCISCO TENNIS CLUB erroneously sued as SAN FRANCISCO TENNIS CLUB, INC.; OK LOS GATOS TENNIS, INC. erroneously sued as LOS GATOS TENNIS CLUB, INC.; OK MARINA CLUB MANAGEMENT, INC. erroneously sued as MARINA CLUB MANAGEMENT, INC.; and CLUBCORP AIRWAYS GOLF INC. erroneously sued as CLUBCORP AIRWAYS GOLF CLUB, INC.

3.     Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served on Defendants in the State Court Action as of the date of this filing are attached collectively to this Notice of Removal as **Exhibit A** and incorporated herein by reference.

4.     On June 10, 2019, Defendants received by e-mail a form Notice of Acknowledgement of Receipt from Plaintiff's counsel attaching a copy of the Summons and the Complaint, Civil Case Cover Sheet, Notice of Case Management Conference and Alternative Dispute Resolution Package.

5.     On June 11, 2019, Defendants executed and returned the Notice and Acknowledgment of Receipt.  Under California Code of Civil Procedure Section 415.30(a), service is "deemed complete on the date a written acknowledgment of receipt of summons is executed, if such acknowledgment thereafter is returned to the sender."

6.     This Notice of Removal is timely because it is filed within 30 days of June 11, 2019.  28 U.S.C. § 1446(b); Fed. R. Civ. P. 6(a)(1); *see also Prado v. Dart Container Corp. of Cal.*, 373 F. Supp. 3d 1281, 1285 (N.D. Cal. 2019).

## II.    SUMMARY OF ALLEGATIONS AND BASES FOR REMOVAL

7.     Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1446 because this Court has original subject matter jurisdiction over this action under 28 U.S.C. § 1331.

8.     This case and all claims in this case arise under federal common law—meaning that the action itself arises under the laws of the United States.  28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); *Illinois v. City of Milwaukee, Wis*., 406 U.S. 91, 100 (1972) ("We see no reason not to give 'laws' its natural meaning, and therefore conclude that § 1331 jurisdiction will support claims founded upon federal common law as well as those of a statutory origin.") (internal citation omitted); *Downey v. Fed. Express Corp.*, No. C-92-4956 MHP, 1993 WL 463283, at *5 (N.D. Cal. Oct. 29, 1993) (citing *National Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850 (1985)) ("**Under 28 U.S.C. § 1331 this court has federal question jurisdiction over federal common law claims even though no specific statute is involved**.") (emphasis added).

9.     Plaintiff brought this suit against Defendants—including owners and operators of various private golf country clubs and business clubs—on a theory that Plaintiff has the right, power, and jurisdiction to escheat certain allegedly abandoned membership initiation deposits, and that such membership initiation deposits are subject to escheat under California's

unclaimed property law.[1]  (Compl. ¶¶ 3, 75.)  In particular, the Complaint seeks a judgment that would require Defendants to (1) allow Plaintiff to perform unclaimed property audits of Defendants' books and records; (2) be subject to an order to determine the number and value of unclaimed membership deposits allegedly held by Defendants so as to be reported and escheated to Plaintiff; (3) deliver all unclaimed property that they allegedly hold, including the allegedly unclaimed membership initiation deposits; and (4) pay statutory fines, interest, and costs.  (*See id.* at p. 14.)

10.    The underpinning of Plaintiff's claims—alleging violations of California's unclaimed property laws (Code of Civil Procedure Section 1500 *et seq.*)—necessarily depends on the resolution of actually disputed and substantial questions of federal common law, as established by the United States Supreme Court in a line of related decisions in *Texas v. New Jersey*, 379 U.S. 674 (1965), *Pennsylvania v. New York*, 407 U.S. 206 (1972), and *Delaware v. New York*, 507 U.S. 490 (1993).  **In particular, before a State can escheat unclaimed intangible property, the State "bear[s] the burden of establishing" that it has jurisdiction to escheat the property under federal common law.**  *Pennsylvania v. New York*, 407 U.S. at 213 (emphasis added).  Thus, until Plaintiff pleads and proves that the State has jurisdiction to escheat under federal common law, California's unclaimed property laws cannot apply to the membership initiation deposits at issue in the Complaint.

11.    If, under the federal common law giving rise to the claims at issue in this Complaint, Plaintiff is unable to establish that the State has the jurisdiction to escheat the membership initiation deposits at issue, then all of Plaintiff's claims necessarily fail as a matter of federal law.

12.    A claim "aris[es] under" federal law if "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily

---

[1] In this context, the "escheat" of property means that California would take custody of the property on behalf of the owners, who may then reclaim the property at any time.  Cal. Code Civ. Proc § 1572(a)(3). (Compl. ¶¶39-41; 59.)  All state unclaimed property laws are custodial escheat laws rather than "true" escheat laws, under which the state takes title to the property.

- 4 -

**NOTICE OF REMOVAL**

1  depends on resolution of a substantial question of federal law." *Empire Healthchoice*
2  *Assurance, Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006) (quoting *Franchise Tax Bd. of Cal.*
3  *v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983)).  As far as the latter
4  situation, "federal-question jurisdiction will lie over state-law claims that implicate significant
5  federal issues" or "turn on substantial questions of federal law." *Grable & Sons Metal Prods.,*
6  *Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  In such cases, like this one, federal-
7  question jurisdiction exists when the "state-law claim necessarily raise[s] a stated federal issue,
8  actually disputed and substantial, which a federal forum may entertain without disturbing any
9  congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.
10  This rule of decision "captures the commonsense notion that a federal court ought to be able
11  to hear claims recognized under state law that nonetheless turn on substantial questions of
12  federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a
13  federal forum offers on federal issues." *Id.* at 312.

14      13.    It is axiomatic that federal common law is developed through decisions of
15  federal courts.  *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 156-57 (1985) (Brennan,
16  J., concurring); *see also D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 472 (1942) (Jackson,
17  J., concurring) ("federal courts are free to apply the traditional common-law technique of
18  decision and draw upon sources of the common law"); *City of Milwaukee*, 406 U.S. at 105 n.6
19  ("[W]here there is an overriding federal interest in the need for a uniform rule of decision or
20  where the controversy touches basic interests of federalism, we have fashioned federal
21  common law.").[2]

22      14.    In *Texas v. New Jersey,* the United States Supreme Court established rules to
23  determine when a State has the "right and power"—*i.e.*, the jurisdiction—to escheat unclaimed
24  intangible property.  379 U.S. at 675, 680.  The Court pronounced what has become known as
25  the "primary rule": "each item of property in question . . . is subject to escheat only by the

---

26  [2] A federal forum and the application and development of a uniform body of federal common
27  law is particularly appropriate where, as here, "the question is whether the financial institution
     gets the money or one of several competing state governments." *See, e.g.*, *Taylor v. Westly*,
28  402 F.3d 924, 926 (9th Cir. 2005).

State of the last known address of the creditor, as shown by the debtor's books and records." *Id*. at 681-82.  The Court also established a "secondary rule": if the last known address of the creditor is unknown, then the "State of corporate domicile" of "the debtor" has the jurisdiction to escheat property.  *Id*. at 682.

15.    Subsequently, in *Delaware v. New York,* the Supreme Court explained that the jurisdictional escheat rules created in *Texas v. New Jersey* "cannot be severed from the law that creates the underlying creditor-debtor relationships."  507 U.S. at 503. The Court thus held that disputes regarding "the right to escheat intangible personal property" must be resolved in the following three steps:

> First, we must determine the precise debtor-creditor relationship as defined by the law that creates the property at issue.  Second, because the property interest in any debt belongs to the creditor rather than the debtor, the primary rule gives the first opportunity to escheat to the State of "the creditor's last known address as shown by the debtor's books and records."  Finally, if the primary rule fails because the debtor's records disclose no address for a creditor or because the creditor's last known address is in a State whose laws do not provide for escheat, the secondary rule awards the right to escheat to the State in which the debtor is incorporated.

507 U.S. at 499-500 (internal citation omitted).

16.    The jurisdictional escheat rules set forth in *Texas v. New Jersey* and *Delaware v. New York* constitute federal common law.  *See City of Milwaukee,* 406 U.S. at 105-06 (citing *Texas v. New Jersey* as an example of federal common law); *Marathon Petroleum Corp. v. Sec'y of Fin. for Del.*, 876 F.3d 481, 484 (3d Cir. 2017) (explaining that Supreme Court decisions outlining states' authority to "escheat abandoned property" have been "[c]onstructed as federal common law"); *N.J. Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 391-93 (3d Cir. 2012) (recognizing that jurisdictional "escheat rules" under *Texas v. New Jersey*, *Pennsylvania v. New York*, and *Delaware v. New York* constitute federal common law).  This body of federal common law—which determines whether a state has the right to escheat intangible personal property in any particular case—is not only applicable to "disputes among states," but also, as here, "directly applicable to disputes between a private individual and a

1  state." *Marathon*, 876 F.3d at 494; *Am. Petrofina Co. of Tex. v. Nance*, 859 F.2d 840, 842
2  (10th Cir. 1988).

3      17.    In *Delaware v. New York*, the Supreme Court emphasized the supremacy of
4  federal law in this area with the categorical statement that "no State may supersede" these
5  federal common law rules. 507 U.S. at 500 (citation omitted).  Thus, a state (here, California)
6  must first establish, as a threshold issue, that it has the jurisdiction to escheat under the federal
7  common law rules. *See Pennsylvania v. New York*, 407 U.S. at 213 (the State first "bear[s] the
8  burden of establishing" that it has jurisdiction to escheat the property under federal common
9  law); *Marathon*, 876 F.3d at 485, 499-500 (analyzing threshold issue of whether Delaware had
10  "authority to escheat property" under federal common law).  Only if the state can make that
11  required showing under federal law will the state's own unclaimed property laws become
12  applicable to determine if state law requires the escheat of such property.

13      18.    Here, Plaintiff's "right to relief necessarily depends on resolution of []
14  substantial question[s] of federal law." *Franchise Tax Bd.*, 463 U.S. at 28.  Those questions
15  are disputed and substantial because Plaintiff's entire case hinges on first establishing that it
16  has the jurisdiction to escheat the membership initiation deposits that are the subject of the
17  Complaint.  More specifically, Plaintiff's claims and right to relief turn on the resolution of at
18  least three substantial questions of federal common law.

19      19.    ***First***, the Complaint raises a substantial question under federal common law
20  because it is built on the legal premise that "Defendants are 'holders' under the UPL" of
21  unclaimed property that is reportable to California.  (Compl. ¶ 42.)  California's unclaimed
22  property law defines a "holder" to include "any person **in possession** of property subject to
23  this chapter belonging to another."   Cal. Civ. Proc. Code § 1501(e) (emphasis added).
24  Plaintiff's legal premise thus ignores the predicate step in determining whether California has
25  jurisdiction to escheat under federal common law.  As *Delaware v. New York* makes clear, the
26  initial step for assessing whether a state has a right to escheat intangible personal property is
27  determining whether there is a "debtor-creditor relationship" and, if so, who **the debtor** is.
28  507 U.S. at 499-500; *Marathon*, 876 F.3d at 499 ("the Supreme Court has noted that the first

1   step in determining the right to escheat property involves a determination of the precise debtor-

2   creditor relationship") (internal quotations omitted).   Thus, Plaintiff must plead with

3   specificity and ultimately prove that there is a "debtor-creditor relationship" with respect to

4   the membership initiation deposits at issue and that each Defendant is a "debtor."

5       20.   For the membership initiation deposits at issue in this case, the precise debtor-

6   creditor relationship—if one exists at all—is between the club and its member by function of

7   their contractual relationship.   (*See, e.g.*, Compl. ¶ 44 ("The unclaimed property at issue

8   included millions of dollars' worth of 'initiation deposits' or 'membership deposits' that

9   ClubCorp has collected over many years from former and current members of its golf and

10  country clubs nationwide.").   Thus, if there is a debtor-creditor relationship, which Defendants

11  do not concede, then these individual clubs would be the **"debtors"** with the contractual

12  obligation to their respective club members, if any.

13      21.   By alleging that Defendants are "holders" under California's unclaimed property

14  laws, and as such are required to escheat the membership initiation deposits, Plaintiff alleges

15  that any Defendant "in possession" of the money at issue must escheat the membership

16  initiation deposits **even if the Defendant is not a debtor**.   (Compl. ¶ 42.)  In *Delaware v. New

17  York*, however, "the Court rejected any efforts to loosen or change the [federal common law]

18  rules by broadening the concept of a property-holding 'debtor.'"  *Marathon*, 876 F.3d at 490.

19  And yet that is exactly what Plaintiff seeks to do here.

20      22.   By alleging that Defendants are "holders" of property that must be escheated,

21  Plaintiff thus ignores the threshold jurisdictional question under federal common law as to

22  whether each Defendant is a "debtor" to a club member.  If Defendants are not "debtors," then

23  Plaintiff lacks jurisdiction under federal common law to require Defendants to escheat the

24  membership initiation deposits to California.  Put differently, the definition of a "holder" of

25  unclaimed property under California's unclaimed property law does not become relevant until

26  **after** Plaintiff establishes that she has the right and power to escheat the membership initiation

27  deposits from Defendants under applicable federal common law.  If Plaintiff cannot make that

28  showing, then Plaintiff lacks the jurisdiction to escheat the membership initiation deposits and

California's unclaimed property law is not applicable.

23.     **Second**, the Complaint raises a substantial question of whether—under federal common law—there is even a "debt" in relation to the membership initiation deposits that is potentially subject to escheat by California under its unclaimed property laws.  (*See* Compl., ¶ 44 ("In violation of its contractual obligations and the UPL, ClubCorp has failed to repay or refund the deposits to former and current members, and has failed to report and deliver the unclaimed funds to the Controller as required by the UPL and other states' unclaimed property laws.")).   Here again, Plaintiff ignores her burden of first establishing that the State has jurisdiction to escheat these membership initiation deposits under federal common law.

24.     This threshold inquiry under federal common law is critical: If there is no debt, then there is no property potentially subject to escheat, and California's unclaimed property laws cannot apply.  Indeed, in *Delaware v. New York*, the Court stated that "**the holder's legal obligations . . . define[] the escheatable property at issue.**"   507 U.S. at 503 (emphasis added); *see also Texas v. New Jersey*, 379 U.S at 680 (referring to the unclaimed property as a "debt" that is a "liability" and the "property of the creditor").

25.     Based on the contractual relationship and course of dealing between a club and its members, and on other applicable laws impacting the debtor-creditor relationship, certain conditions may need to be satisfied before a club member is entitled to return of a membership initiation deposit.  For example, the membership initiation deposit is not payable—*i.e.*, a refund is not obtainable—until after the stipulated passage of time and the member makes a request or demand to the club.  Moreover, a member may not be entitled to a refund of the membership initiation deposit if the member is in breach of the membership agreement with the club.  The Complaint ignores these and other requirements.  Indeed, the Complaint acknowledges that the State has not audited Defendants' books and records with respect to the membership initiation deposits at issue.  (*See, e.g.*, Compl. ¶¶ 45, 46, 50, 52.)  As a result, Plaintiff cannot possibly know the details of the thousands of different member contracts at issue, which span decades.  (*Id*. ¶ 45.)  Yet, Plaintiff confidently alleges that, regardless of the facts, the membership initiation deposits are escheatable to California and that the audit relief

1   she requests is only necessary "to precisely determine how many such deposits are unclaimed

2   and their value."  (*Id.* ¶ 48.)  Plaintiff thus entirely skips over the threshold inquiry of whether

3   California has the right to escheat the membership initiation deposits under federal law, which

4   requires an examination of the "precise" underlying debtor-creditor relationships between

5   Defendants and their members, and assumes that California's unclaimed property law is

6   applicable (and that the membership initiation deposits are escheatable under such law).

7   *Delaware v. New York*, 507 U.S. at 499-500.   Plaintiff's requested relief would require

8   Defendants to escheat funds to the State of California even though there is no "debt" owed.

9         26.     Plaintiff's position is contrary to the federal common law principles set forth in

10   the *Texas v. New Jersey* line of cases.   Under those cases, only the actual "debt" may be

11   claimed by the state—nothing more.   Consequently, if no legal obligation to pay currently

12   exists, then Plaintiff lacks jurisdiction to escheat the membership initiation deposits under

13   federal common law.

14         27.     ***Third***, even if the membership initiation deposits were "debts" and each

15   Defendant were a "debtor," the Complaint raises another substantial question of federal

16   common law: whether Plaintiff can establish jurisdiction to escheat the membership initiation

17   deposits by showing that the primary rule or the secondary rule is satisfied.  *Delaware v. New

18   York*, 507 U.S. at 499-500 ("[T]he primary rule gives the first opportunity to escheat to the

19   State of 'the creditor's last known address as shown by the debtor's books and records.'

20   Finally, if the primary rule fails because the debtor's records disclose no address for a creditor

21   or because the creditor's last known address is in a State whose laws do not provide for escheat,

22   the secondary rule awards the right to escheat to the State in which the debtor is incorporated.")

23   (internal citation omitted); *see also Pennsylvania v. New York*, 407 U.S. at 215-16 (requiring

24   New York to prove that Western Union had no addresses for owners of unclaimed money

25   orders, before New York would have the jurisdiction to escheat under the secondary rule).

26         28.     The Complaint omits any allegations as to whether the primary rule or the

27   secondary rule are satisfied here (indeed, it fails to acknowledge even the existence of these

28   rules), and instead concludes that "[a]ny unclaimed deposits of former and current members

of ClubCorp clubs located outside of California must also be reported and escheated to the Controller, if the dormancy period has expired and any such members' last known address is in California." (Compl. ¶ 48.) But under the primary rule, Plaintiff has jurisdiction to escheat only if "the last known address of the creditor, **as shown by the debtor's books and records**," is in California. *Texas*, 379 U.S. at 681-82 (emphasis added).

29.     Indeed, in *Texas v. New Jersey*, the Court emphasized that "since our inquiry here is not concerned with the technical domicile of the creditor, and since ease of administration is important where many small sums of money are involved, **the address on the records of the debtor, which in most cases will be the only one available, should be the only relevant last-known address.**" *Id*. at 681 n.11 (emphasis added). Again, "no State may supersede" these federal common law rules. *Delaware v. New York,* 507 U.S. at 500 (citation omitted). By attempting to expand the scope of the primary rule, Plaintiff thus unlawfully seeks to take custody of property that it lacks jurisdiction to escheat under federal law, and makes a premature demand for escheatment before auditing the membership agreements.

30.     Furthermore, if Defendants lack a record of the member's address, then the secondary rule applies only if the legal debtor is incorporated (*i.e.*, domiciled) in the State. *Delaware v. New York*, 507 U.S. at 499-500. However, Plaintiff alleges that it has jurisdiction to escheat the membership initiation deposits if Defendants are domiciled in the State **or** "engaged in and transacting business in the state." (Compl. ¶ 42.) Once again, such attempts to circumvent the federal common law jurisdictional escheat rules are prohibited. *Delaware v. New York,* 507 U.S. at 500; *Marathon*, 876 F.3d at 491 ("[T]he two states allowed to escheat under the [federal common law] rules of the *Texas* case are the only states that can do so.").

31.     Thus, Plaintiff's right to relief necessarily depends on resolution of substantial and disputed questions of federal common law. Plaintiff has a threshold burden to establish the State's jurisdiction to escheat. *Pennsylvania v. New York*, 407 U.S. at 213. Plaintiff cannot prevail on any escheatment claim under California's unclaimed property law until after Plaintiff has established that (i) each Defendant is a "debtor" under federal common law; (ii)

1  the membership initiation deposits are "debts" under federal common law; and (iii) California

2  has jurisdiction to escheat the membership initiation deposits under either the primary rule or

3  the secondary rule.

4        32.    These questions of federal common law—and similar questions of federal

5  common law, also related to the *Texas v. New Jersey* rules—are critical, dispositive issues in

6  this case. Plaintiff's right to relief necessarily depends on resolution of these substantial

7  questions of federal law. *Empire Healthchoice*, 547 U.S. at 689-90 (quoting *Franchise Tax*

8  *Bd.*, 463 U.S. at 27-28). Plaintiff cannot prevail on her claims under California's unclaimed

9  property laws, unless Plaintiff first prevails on these substantial, dispositive questions of

10  federal law. Until Plaintiff crosses that threshold, California's unclaimed property laws do not

11  even become applicable.

12        33.    This Court may "entertain [these questions] without disturbing any

13  congressionally approved balance of federal and state judicial responsibilities." *Grable &*

14  *Sons,* 545 U.S. at 314. Indeed, because federal common law is developed only through

15  decisions of the federal courts, these questions should be addressed in a federal forum, not in

16  the courts of any individual state. *Mass. Mut. Life*, 473 U.S. at 156-57; *D'Oench, Duhme*, 315

17  U.S. at 472.

18        34.    For the reasons set out above, all of the claims asserted in the Complaint are

19  within this Court's original federal-question jurisdiction. But even if particular claims were

20  not subject to original federal-question jurisdiction, those claims would be within this Court's

21  jurisdiction under 28 U.S.C. § 1367(a) because they are so related to claims within the Court's

22  original jurisdiction that they form part of the same case or controversy.

23  **III.    <u>THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER</u>**

24        35.    Based on the foregoing facts and allegations, this Court has original jurisdiction

25  over this action pursuant to 28 U.S.C. § 1331. Removal of this action is therefore proper under

26  28 U.S.C. § 1441 and § 1446.

27        36.    The United States District Court for the Northern District of California is the

28  appropriate venue for removal pursuant to 28 U.S.C. § 1441(a), because the United States

**NOTICE OF REMOVAL**

1 District Court for the Northern District of California is the federal judicial district embracing
2 the San Francisco County Superior Court where the State Court Action was originally filed.
3 28 U.S.C. § 84(a); 28 U.S.C. § 1441(a).

4      37.    True and correct copies of all process, pleadings, and orders served on
5 Defendants to date are attached collectively to this Notice of Removal as **Exhibit A**.  *See* 28
6 U.S.C. § 1446(a).

7      38.    Upon filing this Notice of Removal, Defendants will furnish written notice to
8 Plaintiff's counsel and will file and serve a copy of this Notice with the Clerk of the San
9 Francisco County Superior Court in accordance with 28 U.S.C. § 1446(d).

10      39.    In filing this Notice of Removal, Defendants expressly reserve and do not waive
11 any or all defenses and counterclaims available to them, including their defenses under Rule
12 12 of the Federal Rules of Civil Procedure.

13 **IV.**    **<u>CONCLUSION</u>**

14      Based on the foregoing facts and allegations, this action is hereby removed from the
15 Superior Court of the State of California, County of San Francisco, to the United States District
16 Court for the Northern District of California.  The undersigned Defendants respectfully request
17 that this Court exercise full jurisdiction over this action to the exclusion of further proceedings
18 in the state court and that this action proceed in this Court as a properly removed action.

20 Dated:  July 10, 2019        Respectfully submitted,

21                           Ethan D. Millar
22                           Elizabeth A. Sperling
                          Coral Del Mar Lopez
23                           **ALSTON & BIRD LLP**

24                           By: */s/ Ethan D. Millar*_____
25                           Ethan D. Millar
                          Attorneys for Defendants
26                           CLUBCORP HOLDINGS, INC., ET AL.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I, Ethan D. Millar, certify and declare as follow:

1.      I am over the age of 18 and not a party to this action.

2.      My business address is 333 South Hope Street, Sixteenth Floor, Los Angeles California 90071.

3.      On July 10, 2019, I caused a copy of the **NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1331, 1441, 1446** to be served upon the following counsel via U.S. Mail. I am "readily familiar" with this firm's practice for the collection and the processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, the correspondence would be deposited with the United States Postal Service at 333 South Hope Street, Los Angeles, California 90071 with postage thereon fully prepaid the same day on which the correspondence was placed for collection and mailing at the firm. Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope at Alston & Bird LLP, 333 South Hope Street, Los Angeles, California 90071.

| | |
|---|---|
| Xavier Becerra<br>Attorney General of California<br>Paul Stein<br>Supervising Deputy Attorney General<br>S. Michele Inan<br>Deputy Attorney General<br>455 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102-7004 | Attorneys for Plaintiff<br>Betty T. Yee, Controller of the State of California<br><br>Telephone: 415-703-5474<br>Facsimile:  415-703-5480<br>E-mail:  michele.inan@doj.ca.gov |

I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct. Executed on the 10th, day of July, 2019, at Los Angeles, California.

*/s/ Ethan D. Millar*
Ethan D. Millar
Attorneys for Defendants, ClubCorp Holdings, Inc., et al.