IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BETTY T. YEE, CONTROLLER OF THE STATE OF CALIFORNIA,

    Plaintiff,

  v.

CLUBCORP HOLDINGS, INC., CLUBCORP CLUB OPERATIONS, INC., CCA CLUB OPERATIONS HOLDING, LLC, CLUBCORP USA, INC., CLUBCORP ALISO VIEJO HOLDING CORP., BERNARDO HEIGHTS COUNTRY CLUB, CLUBCORP BRAEMAR COUNTRY CLUB, INC., CLUBCORP CREST COUNTRY CLUB, INC., CLUBCORP CENTER CLUB, INC., CLUBCORP COTO PROPERTY HOLDINGS, INC., CLUBCORP CROW CANYON MANAGEMENT CORP., CLUBCORP DESERT FALLS COUNTRY CLUB, INC., GRANITE BAY GOLF CLUB, INC., A/K/A CLUBCORP GRANITE BAY MANAGEMENT, INC., CLUBCORP IW GOLF CLUB, INC., CLUBCORP MISSION HILLS COUNTRY CLUB, INC., CLUBCORP PORTER VALLEY COUNTRY CLUB, INC., SANTA ROSA GOLF & COUNTRY CLUB, CLUBCORP SPRING VALLEY LAKE COUNTRY CLUB, INC., CLUBCORP TEAL BEND GOLF CLUB, INC., CLUBCORP TURKEY CREEK GOLF CLUB, INC., CLUBCORP SYMPHONY TOWERS CLUB, INC., CITY CLUB OF LOS ANGELES, INC.,A/K/A CLUBCORP BUNKER HILL CLUB, INC., SILICON VALLEY CAPITAL CLUB A/K/A CLUBCORP SAN JOSE CLUB, INC., MORGAN RUN CLUB & RESORT, EMPIRE RANCH GOLF CLUB, INC., OLD RANCH COUNTRY CLUB, LLC, SHADOWRIDGE GOLF CLUB, INC., ROYAL DRIVE COUNTRY CLUB, INC., MCC MANAGEMENT CORPORATION, LAKEVIEW CITY CLUB, INC., SAN FRANCISCO TENNIS

No. C 19-03953-WHA

No. C 19-03972-WHA

*Related Cases*

**ORDER GRANTING MOTIONS TO REMAND TO SAN FRANCISCO SUPERIOR COURT**

| | |
|---|---|
| 1 | CLUB, INC., LOS GATOS TENNIS CLUB, INC., MARINA CLUB MANAGEMENT, INC., |
| 2 | CLUBCORP AIRWAYS GOLF CLUB, INC., AND DOES 1–100, |
| 3 | |
| 4 | Defendants. |

| | |
|---|---|
| 5 | PEOPLE OF THE STATE OF CALIFORNIA, |
| 6 | Plaintiff, |
| 7 | v. |
| 8 | CLUBCORP HOLDINGS, INC., CLUBCORP CLUB OPERATIONS, INC., CCA CLUB OPERATIONS HOLDING, LLC, CLUBCORP USA, INC., CLUBCORP ALISO VIEJO HOLDING CORP., BERNARDO HEIGHTS COUNTRY CLUB, CLUBCORP BRAEMAR COUNTRY CLUB, INC., CLUBCORP CREST COUNTRY CLUB, INC., CLUBCORP CENTER CLUB, INC., CLUBCORP COTO PROPERTY HOLDINGS, INC., CLUBCORP CROW CANYON MANAGEMENT CORP., CLUBCORP DESERT FALLS COUNTRY CLUB, INC., GRANITE BAY GOLF CLUB, INC., A/K/A CLUBCORP GRANITE BAY MANAGEMENT, INC., CLUBCORP IW GOLF CLUB, INC., CLUBCORP MISSION HILLS COUNTRY CLUB, INC., CLUBCORP PORTER VALLEY COUNTRY CLUB, INC., SANTA ROSA GOLF & COUNTRY CLUB, CLUBCORP SPRING VALLEY LAKE COUNTRY CLUB, INC., CLUBCORP TEAL BEND GOLF CLUB, INC., CLUBCORP TURKEY CREEK GOLF CLUB, INC., CLUBCORP SYMPHONY TOWERS CLUB, INC., CITY CLUB OF LOS ANGELES, INC.; A/K/A CLUBCORP BUNKER HILL CLUB, INC., SILICON VALLEY CAPITAL CLUB A/K/A CLUBCORP SAN JOSE CLUB, INC., MORGAN RUN CLUB & RESORT, EMPIRE RANCH GOLF CLUB, INC., OLD RANCH COUNTRY CLUB, LLC, SHADOWRIDGE GOLF CLUB, INC., ROYAL DRIVE COUNTRY CLUB, INC., MCC MANAGEMENT CORPORATION, LAKEVIEW CITY CLUB, INC., SAN FRANCISCO TENNIS CLUB, INC., LOS GATOS TENNIS CLUB, INC., MARINA CLUB MANAGEMENT, INC., CLUBCORP AIRWAYS GOLF CLUB, INC., and DOES 1–100, |
| 26 | Defendants. |

2

## INTRODUCTION

In these related actions, plaintiffs move to remand the cases to the Superior Court of California for the City and County of San Francisco. To the extent stated below, the motions to remand are **GRANTED**.

## STATEMENT

Two related actions have been brought against ClubCorp Holdings, Inc. and its affiliated subsidiaries. The first action, referred to as ClubCorp I, is an action brought by the Controller of California on behalf of the People of the State of California. *Yee v. ClubCorp Holdings, Inc., et al*, Case No. 3:19-cv-03953-WHA. The second action, referred to as ClubCorp II, is brought by the People of the State of California under different laws. *People of the State of California v. ClubCorp Holdings Inc. et al,* Case No. 3:19-cv-03972-WHA. Because both claims for relief are against identical defendants and contain the same allegations arising from the same nucleus of operative facts, the undersigned granted a motion to relate the cases (ClubCorp II, Dkt. No. 19). Plaintiffs' motions to remand relevant to this order will thus be addressed together.

ClubCorp owns and operates more than 200 private golf and country clubs worldwide, including more than twenty subsidiary or affiliated clubs located in California. At issue are the "membership" and "initiation" deposits members pay to ClubCorp upon their acceptance to the clubs. Plaintiffs allege ClubCorp's membership agreements provide that those deposits will be unconditionally refunded to the members after thirty years, but thus far ClubCorp allegedly has failed to refund any. ClubCorp has collected (and now owes) millions of dollars of such deposits (ClubCorp II, Compl. ¶¶ 8–11, 49–52) (Dkt. No. 1).

In ClubCorp I, the Controller seeks to enforce California's Unclaimed Property Law, Cal. Civ. Proc. Code § 1500, *et seq.* The UPL establishes a procedure where abandoned property escheats to California. Under the UPL, a "holder" means any person (usually a financial institution or other business) in possession of property belonging to another or who is otherwise indebted to another. An "owner" refers to a creditor claimant or any person having a legal or equitable interest in property subject to the UPL. All intangible property that is held or owed by a holder and that has remained unclaimed by the owner for three years after it has become

payable or distributable escheats to the State. The UPL requires the holders of the abandoned property to identify, report, and deliver the property to the Controller, who will then assume custody of, and be responsible for, the safekeeping of such property until the owner can claim it (ClubCorp I, Compl. ¶¶ 39–41) (Dkt. No. 1-1).

Here, the membership and initiation deposits constitute intangible property held by ClubCorp and owned by club members. The deposits allegedly became payable after thirty years. Three years after the deposits became payable, they became escheatable to California.

In 2008, the Controller joined a multi-state audit to review ClubCorp's books and records to determine the extent of such abandoned property owed. This suit followed ClubCorp's alleged refusal to submit to the audit. The complaint pleads three claims for relief. *First*, the Controller seeks an injunction requiring ClubCorp to comply with its duty to permit a full and complete examination of its books and records under UPL. *Second*, the Controller seeks a judicial determination of the amount of unclaimed property that ClubCorp has failed to escheat in violation of the UPL. *Third*, the Controller seeks an injunction requiring ClubCorp to deliver all such unclaimed property to the Controller (ClubCorp I Compl. ¶¶ 44–45, 52–59) (Dkt. No. 1-1).

In ClubCorp II, the People allege ClubCorp violated the Unfair Competition Law and the California False Claims Act. Cal. Bus. & Prof. Code § 17200; Cal. Gov. Code § 12651(a)(7). Importantly, the People's allegations are predicated on ClubCorp's alleged violation of the UPL (ClubCorp II Compl. ¶¶ 67, 70–71) (Dkt. No. 1).

The Controller filed her complaint in May 2019. The People filed their complaint in June 2019. Both complaints were filed in the Superior Court of the State of California for the City and County of San Francisco. ClubCorp timely removed both to federal court. ClubCorp based its removal on federal-question jurisdiction, contending allegations of UPL violations necessarily depend on resolutions of substantial questions of federal common law. Plaintiffs disagree and filed motions to remand. Both plaintiffs seek attorney's fees and costs, alleging removal was not objectively reasonable. This order follows full briefing and a hearing (ClubCorp I, Dkt. Nos. 1, 1-1, 28, 30, 31) (ClubCorp II, Dkt. Nos. 1, 23, 25, 26).

**ANALYSIS**

Federal courts have subject-matter jurisdiction over claims arising under federal statutes, federal administrative regulations, or federal common law. 28 U.S.C. § 1331. An action "arises under" federal law within the meaning of Section 1331 if either (1) federal law creates the cause of action or (2) the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27–28 (1983). A state-law claim may be treated as one "arising under" federal law only if a federal issue is necessarily raised, actually disputed, substantial, and capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Significantly, federal-question jurisdiction does not exist where the complaint is based entirely on state law, even if issues of federal law are certain to be raised in defendant's answer. *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127–128 (1974).

Here, the claims relevant to removal arise under state law, specifically California's Unclaimed Property Law. ClubCorp does not dispute this. Instead, ClubCorp contends that the claims also arise under federal law because the state-law claims depend on the resolution of four substantial questions of federal common law. ClubCorp primarily argues that the plaintiffs must first establish "jurisdiction to escheat" under federal common law before state law (California's UPL) even can be considered. Four of ClubCorp's contentions derive from that general argument (ClubCorp I, Dkt. No. 1 ¶¶ 10, 12, 17–19, 22, 23, 25, 27, 31, 32). ClubCorp's fifth contention alleges the Controller's audit demand constitutes a violation of federal law (ClubCorp I, Dkt. No. 30 at 9–12).

For the following reasons, this order finds none of ClubCorp's arguments are sufficient to confer removal jurisdiction.

1. **THERE IS NO REQUIREMENT TO FIRST ESTABLISH JURISDICTION UNDER FEDERAL COMMON LAW.**

ClubCorp repeatedly contends that claims involving state escheatment laws necessarily involve federal common law (ClubCorp I, Dkt. No. 1 ¶¶ 10, 17–19, 22, 23, 25, 27, 31, 32). ClubCorp's argument centers around a line of Supreme Court decisions which established a

5

strict order of priority among states competing to escheat abandoned, intangible property. *See Texas v. New Jersey*, 379 U.S. 674 (1965); *Pennsylvania v. New York*, 407 U.S. 206 (1972); *Delaware v. New York*, 507 U.S. 490 (1993). Framed as federal common law, states must first determine a precise debtor-creditor relationship as defined by the law that creates the property. A primary rule then gives the first opportunity to escheat to the state of the creditor's last known address, as shown by the debtor's books and records. If that residence cannot be identified or if that state has disclaimed its interest in escheating the property, a secondary rule awards the right to escheat to the state in which the debtor is incorporated, unless some other State comes forward with proof that it has a superior right to escheat. No other state may escheat the property. The Supreme Court has refused to adjust or otherwise deviate from these steps, and states may not dodge them by prescribing a different priority under state law. *Delaware*, 507 at 499–500.

Because these decisions impact what property a state may escheat, and may not be superseded by states, they naturally affect every state's escheatment laws. In order to adjudicate escheatment claims, then, all states necessarily have to apply federal common law.

No decision, however, has ever taken these holdings so far as to create removal jurisdiction for escheatment claims. ClubCorp contends that "until [p]laintiff pleads and proves that the [s]tate has jurisdiction to escheat under federal common law, California's unclaimed property laws cannot apply . . ." (ClubCorp I, Dkt. No. 1 ¶ 10). In other words, ClubCorp asserts escheatment must be pleaded and proven first under federal common law and then again under state law. ClubCorp puts forth this argument several times: once as a standalone argument that speaks to escheatment as a whole, and then three times thereafter, claiming each individual step in the escheatment process must be analyzed first under federal law (ClubCorp I, Dkt. No. 1 ¶¶ 10, 19, 23, 27). However, at no point has the Supreme Court found that these decisions create or require some additional step in pleading. Contrarily, the Supreme Court devised the rules at least in part to simplify the process of escheatment, and it has repeatedly refused to make adjustments or carve out exceptions to the rules so as to preserve that simplicity. *See Texas*, 379 U.S. at 683; *Pennsylvania*, 407 U.S. at 215; *Delaware*, 507 U.S. at 510.

ClubCorp clings to a statement in *Pennsylvania v. New York* to support this argument that

6

a separate analysis under federal common law is required (Dkt. No. 1 ¶¶ 10, 17, 27, 31). That statement, however, was a casual reference to a report by an appointed special master and merely stated "New York would bear the burden of establishing 'as to all escheatable items the absence from Western Union's records of an address for the creditor.'" 407 U.S. at 213. In other words, a special master's report therein recommended that a state trying to claim another state's escheatable property had the burden to show it could do so. The reference arose in the context of an interstate dispute under the original jurisdiction of the Supreme Court. This was not a broad holding that every state must plead (and prove) jurisdiction to escheat, much less that every case is removable. It merely referred to the specifics of that two-state dispute. Thus, ClubCorp's contention that the Supreme Court decisions require a separate threshold analysis fails.

### 2. THE FEDERAL COMMON LAW IS NOT SUFFICIENTLY IMPLICATED UNDER *GRABLE*.

What is more, the facts here are insufficient to confer federal-question jurisdiction so as to justify removal. ClubCorp concedes that the plaintiffs' claims are anchored in state law, not federal law (ClubCorp I, Dkt. No. 1 ¶ 12). Thus, removal is only proper if a federal issue is necessarily raised, actually disputed, substantial, and capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

True, the adjudication of escheatment necessarily raises an issue of federal law. But only one part of the federal law may be disputed: whether the addresses of owners are to be determined from the books and records of ClubCorp and from no where else. To this point, the UPL allows California to escheat property if "[n]o address of the apparent owner appears on the records of the holder and the last known address of the apparent owner is in this state . . . ." Cal. Civ. Proc. Code § 1510(b). This would allow the Controller to use information other than the records of the holder to ascertain the address of the owner. ClubCorp points out, and this order agrees, that this addition by the UPL may not be in line with the federal common law rules. The Controller refers to language in *Texas v. New Jersey* to support this purported exception, namely "the [s]tate of corporate domicile should be allowed to . . . retain[] the property for itself

7

only until some other [s]tate comes forward with proof that it has a superior right to escheat."
379 U.S. at 682. This snippet suggests a state must have proof the primary rule applies to it, which would require an address from the records of the debtor. The Controller's interpretation, on the other hand, runs counter to the Supreme Court's black-and-white rules and has not been cited in any decision as a basis for escheatment.

Nevertheless, this potential dispute is not substantial enough to justify removal. Moreover, any conflict between the federal common law and the UPL constitutes a defense for ClubCorp. Unless federal law completely preempts state law, however, a federal defense to a state law claim is an insufficient basis for federal-question jurisdiction. *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009).

With regard to the remaining issues raised by ClubCorp, the latter three *Grable* factors are not met. *First*, the federal common law rules are not disputed; apart from the above-mentioned nuance, the UPL follows the rules of priority laid out in *Texas v. New Jersey*, and the complaint defines ClubCorp as a debtor and nothing more. *Second*, because the federal laws are not disputed, adjudication in this court would have an insubstantial impact on federal law. *Third*, adjudication in a district court would disrupt a balance between federal and state courts by sweeping hundreds of state-based escheatment claims into federal court, despite neither Congress nor the Supreme Court having given any indication of opening such floodgates. *Grable*, 545 U.S. at 313–14.

No decision in American jurisprudence has ever sustained removal on the basis that escheatment, by itself, necessarily raises a substantial and disputed issue of federal law. Thus far, ClubCorp has failed to show why our case should be the first.

In a final bid, ClubCorp cites *Marathon Petroleum Corp. v. Secretary of Finance for the State of Delaware*, claiming this decision marks a seachange in escheatment law and justifies removal. 876 F.3d 481, 501 (3rd Cir. 2017). *Marathon*, however, was not a removal case. In *Marathon*, an issue arose when Delaware commenced an examination of two Delaware corporations, including their Ohio subsidiaries. Specifically, Delaware targeted unredeemed gift cards sold by the subsidiaries. *Id.* at 486–87. The corporations argued that because the Ohio

8

subsidiaries were incorporated in Ohio, and because neither subsidiary obtained the addresses of gift card purchasers or recipients, Delaware lacked authority to escheat any sums associated with the unredeemed gift cards. *Id*. at 487–88. The corporations ultimately filed a complaint against Delaware in the district court, contending Delaware's escheat law violated the federal common law. *Ibid*. The Third Circuit permitted the private claim to enforce the priority rules, stating the rules were created to reduce conflicts between states *and* to protect individuals. *Id*. at 494.

ClubCorp argues that, based on this decision, any escheatment dispute between a state and a private party necessarily involves the federal common law. Not so. *First*, the claim in *Marathon* directly arose from the federal common law because the corporations brought suit to enforce the federal common law rules, alleging Delaware's escheat law and actions violated them. *Second*, this allegation was made on the face of the corporation's complaint, not brought up as a defense in an answer. Importantly, it was because the private parties' original claim for relief invoked the federal common law that the federal court was permitted to exercise its limited subject matter jurisdiction. *Id*. at 492 n.13. *Third*, the suit implicated the escheatment rights of multiple states (Delaware and Ohio). Here, by contrast, the Controller has brought suit under California law to escheat California property. No other states are involved and the federal common law will only be raised as a defense. Thus, *Marathon* is not enough to make this the first decision to sustain removal on the basis ClubCorp puts forth.

### 3. WHETHER THE CONTROLLER'S AUDIT CONSTITUTES A VIOLATION OF FEDERAL COMMON LAW IS A DEFENSE.

Finally, ClubCorp alleges the Controller seeks to audit more than is permissible under the Supreme Court decisions. However, nothing in the Supreme Court precedent indicates a state cannot conduct an audit to ascertain the debtor-creditor relationship or the debt owed. Furthermore, both ClubCorp and plaintiffs cite to *Marathon*, which found a state may conduct an audit in such circumstances and that an audit may include a "legitimate inquiry into a parent-subsidiary relationship." 876 F.3d at 499–501.

If an audit should go beyond the scope of a legitimate inquiry, ClubCorp is able to raise this as a defense before the state judge. However, as discussed, unless federal law completely preempts state law, a federal defense to a state law claim is an insufficient basis

9

for federal-question jurisdiction under Section 1331. *Marin*, 581 F.3d at 945. There is not complete preemption here, and this issue therefore does not justify removal.

The party seeking removal bears the burden to establish that jurisdiction exists. *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009). ClubCorp has not met that burden for any of the issues it raises. Accordingly, plaintiffs' motions to remand are **GRANTED**.

### 4. PLAINTIFFS HAVE NOT MET THEIR BURDEN TO BE ENTITLED TO ATTORNEY'S FEES AND COSTS.

Plaintiffs argue removal was not objectively reasonable and that they are therefore they are entitled to costs and actual expenses, including attorney's fees. Plaintiffs have not met their burden to be entitled to costs and the motions are **DENIED**.

### CONCLUSION

To the extent stated above, plaintiffs' motions to remand are **GRANTED**. The Clerk shall **REMAND** these civil actions to the Superior Court of California for the City and County of San Francisco and **CLOSE OUR FILES**.

**IT IS SO ORDERED.**

Dated: October 3, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE